UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

KEVIN J. KENNEDY,       CIVIL NO. 09-1043 (PAM/JSM)

    Petitioner,

v.       REPORT AND RECOMMENDATION

DUKE TERRELL, Warden,

    Respondent.

JANIE S. MAYERON, United States Magistrate Judge.

This matter is before the undersigned Magistrate Judge of the District Court on Petitioner Kevin J. Kennedy's application for habeas corpus relief under 28 U.S.C. § 2241 [Docket No. 1]. Petitioner claims the Federal Bureau of Prisons ("BOP") failed to give him credit toward his current federal prison sentence for certain prior jail time, and that as a result, he will be kept in prison beyond his proper release date. Respondent opposes the Petition claiming that Petitioner has been given all credit for past jail time that he is due.

The matter has been referred to this Court for a Report and Recommendation under 28 U.S.C. § 636 and Local Rule 72.1(c). For the reasons discussed below, the Court recommends that Petitioner's habeas corpus petition should be **DENIED**.

**I.    BACKGROUND**

Petitioner is presently incarcerated at the Federal Medical Center in Rochester, Minnesota. Declaration of John A. Farrar ("Farrar Decl."), ¶ 3. On May 8, 2003, Petitioner was sentenced in the United States District Court for the Northern District of Illinois to 240 months imprisonment and 5 years supervised release for Possession with

Intent to Manufacture More than 500 Grams of Methamphetamine and Felon in Possession of a Firearm. Farrar Decl., ¶¶ 3, 5.

The facts bearing on the computation of Petitioner's jail credit are as follows.

On August 22, 2001, Petitioner committed the federal offenses for which he is currently serving time. Farrar Decl., Attachment ("Attach.") 3 (Judgment in a Criminal Case), p. 1.

On February 27, 2002, Petitioner pled guilty to the August 22, 2001 offense of Methamphetamine Delivery in the District of Court of Clinton County, Iowa. Farrar Decl., Attach. 2 (Presentence Investigation Report), p. 8. On March 21, 2002, Petitioner was sentenced to 10 years of imprisonment for this offense, with 97 days of jail credit for the periods of August 22, 2001 through August 28, 2001, and December 21, 2001 through March 20, 2002. Farrar Decl., ¶ 7, Attach. 2, p. 8; Attach. 8 (Prior Credit Memorandum). On June 24, 2002, Petitioner pled guilty to the October 30, 2001 offense of Possession of Methamphetamine and Possession of Weapon as Felon in the District of Court of Clinton County, Iowa. Farrar Decl., ¶ 7, Attach. 2, p. 9. He was sentenced to a consecutive two-year term of imprisonment with 60 days of jail credit for the periods of October 30, 2001 through December 21, 2001, and June 16, 2002 through June 24, 2002. Farrar Decl., ¶ 7, Attach. 8.

On August 5, 2002, and while serving his state sentences in the Iowa state prison, Petitioner was indicted by a federal grand jury for the August 22, 2001 offenses of Possession with Intent to Manufacture More than 500 Grams of Methamphetamine and Felon in Possession of a Firearm. Farrar Decl., ¶ 4. On August 5, 2002, Petitioner was received in federal custody from the Iowa Department of Corrections ("IDOC") by the United States Marshall Service ("USMS") on a federal writ of habeas corpus ad

prosequendum for his appearance in federal court on the federal charges. Farrar Decl., ¶ 4, Attach. 1 (USMS Individual Custody and Detention Report). This writ was issued on July 23, 2002. Memorandum in Support of Petitioner's Motion Pursuant to 28 U.S.C. § 2241 ("Pet.'s Mem."), Ex. C. On August 20, 2002, Petitioner was ordered detained pending trial on the federal charges. Farrar Decl., Attach. 2 at p. 1.

On May 8, 2003, Petitioner was sentenced in the United States District Court for the Northern District of Illinois to 240 months imprisonment and 5 years of supervised release for Possession with Intent to Manufacture More than 500 Grams of Methamphetamine and Felon in Possession of a Firearm. Farrar Decl., ¶¶ 3, 5, Attach. 3 (Judgment in a Criminal Case). As part of the sentence, United States District Judge Phillip G. Reinhard stated in the Judgment that the 240 months was "[t]o be served concurrently on counts 1 & 2 and to be served concurrently with any state convictions." Farrar Decl., Attach. 3, p. 2. Judge Reinhard also stated during the sentencing hearing that he was making the state and federal sentences run concurrent "because they are related at about the same time and the same type of offenses." Pet.'s Mem., Ex. A (Excerpt of Transcript from Sentencing Hearing).

On May 30, 2003, the USMS returned Petitioner to the state of Iowa. Farrar Decl., ¶ 5, Attach. 1, Section III.

Consistent with BOP Program Statement 5160.05 and as is usually done when a judge orders or recommends that a federal sentence run concurrent with a state sentence, the Regional Director for the BOP's Inmate Systems Administrator, effectuated a *non pro tunc* designation and designated for service of his federal sentence the Iowa facility where Petitioner was serving his state sentence. See Farrar Decl., ¶ 9, Attach. 10 (PS 5160.05); 11 (Letter Designating Petitioner to IDOC dated

3

June 3, 2003). On June 5, 2003, Petitioner was returned to the custody of the Iowa state authorities. See Farrar Decl., Attach. 1.

In accordance with Program Statement 5588.28, 18 U.S.C. § 3584(a) and § 3585(a), the BOP prepared a sentence computation for Petitioner, commencing his federal sentence on the date it was imposed, May 8, 2003. Farrar Decl., ¶ 6. The BOP applied to Petitioner's federal sentence computation credit for the periods he was in state custody prior to sentencing on his state court convictions from August 22, 2001 through August 28, 2001, and from October 30, 2001 through March 20, 2002, for a total of credit of 149 days.[1] Farrar Decl., ¶ 8, Attach. 6 (Sentence Monitoring Computation Data), Attach. 9 (Willis/Kayfez Calculations). Petitioner did not receive credit for August 5, 2002 to May 8, 2003, the date of his sentencing, for the time period he was borrowed from state prison and was in federal custody on the writ.

With the 149 days of credit, plus Petitioner's earned and projected good time credit, Petitioner's projected date of release is May 13, 2020. Farrar Decl., Attach. 6.

On August 21, 2003, Petitioner was paroled and transferred to federal custody pursuant to detainer. Ferra Decl., Attach. 1.

Petitioner subsequently wrote to the sentencing judge requesting an explanation regarding crediting the time he was in federal custody towards his federal sentence, to which Judge Reinhard responded in a docket entry as follows:

> Defendant has written this Court requesting explanation of
> his concurrent federal sentence to his state conviction and
> eligibility for time credit from his original federal custody to
> his date of defendant's sentence which the Bureau of Prison

---

[1] This credit is referred to as a Willis credit. See Willis v. United States, 438 F.2d 923 (5th Cir. 1971). Under Program Statement 5880.28(2)(c), a Willis credit is "given for any time spent in non-federal presentence custody that begins on or after the date of the federal offense up to the date that he first sentence begins to run, federal or non-federal."

> has denied. The court intended to impose a sentence of 240 months imprisonment concurrent with a state-related charge for which he was serving a sentence. The Court believes that he should receive credit for the time he was taken into federal custody on a writ as he was in federal custody and was serving the state sentence. This was the intent of my sentence although the Court lacks any jurisdiction now to correct the sentence.

Pet.'s Mem., Ex. B (Docket Entry dated July 13, 2005, 02 CR 50053, United States District Court, Northern District of Illinois).

## II. DISCUSSION

Petitioner contends that the BOP has improperly refused to give him an additional 290 days of jail credit to his sentence for the time he spent on the federal writ – from July 23, 2002, the date the writ issued, to May 8, 2003, the date of sentencing – , based on Judge Reinhard's statement that he intended that Petitioner receive credit towards his federal sentence for the time he was in federal custody on the federal writ and serving the state sentence. See Petition, p. 3; Pet.'s Mem., pp. 2-4, Ex. C.[2]

In opposition, the BOP submits that Petitioner's sentence was accurately calculated for two reasons: First, based on 18 U.S.C. § 3585(a), his sentence cannot begin prior to the date of imposition on May 8, 2003; and second, credit for the time period in question would amount to dual credit, a violation of 18 U.S.C. § 3585(b). See Gov't Resp. Mem, pp. 2-3.

A writ of habeas corpus pursuant to 28 U.S.C. § 2241 is a proper means for challenging the BOP's computation of jail credit. United States v. Tinsdale, 455 F.3d 885, 888 (8th Cir. 2006); see also Matheny v. Morrison, 307 F.3d 709, 711 (8th Cir. 2002) ("A petitioner may attack the execution of his sentence through § 2241 in the

---

[2] Petitioner exhausted his administrative remedies prior to commencing this suit. Farrar Decl., Attach. 16 (Administrative Remedy Generalized Retrieval Data Form).

5

district where he is incarcerated; a challenge to the validity of the sentence itself must be brought under § 2255 in the district of the sentencing court.") (citation omitted).

This Court concludes that the BOP properly calculated Petitioner's credit against his sentence.

Section 3585 of Title 18 to the United States Code, provides as follows:

> (a) Commencement of sentence.--A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.
>
> (b) Credit for prior custody.--A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>
>> (1) as a result of the offense for which the sentence was imposed; or
>>
>> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
>
> that has not been credited against another sentence.

18 U.S.C. § 3585.

As a general rule, a federal sentence begins when the defendant is "received for transportation to or arrives at 'the official detention facility at which the sentence is to be served.'" Reno v. Koray, 515 U.S. 50, 58 (quoting 18 U.S.C. § 3585(a)). Here, because the sentencing judge ordered that Petitioner's federal sentence was to run concurrent with his state sentence, the BOP effectuated a *nunc pro tunc* designation and designated the IDOC so that Petitioner could begin to serve his federal sentence while he was still serving his state sentence. Ferrar Decl., ¶ 9. However, pursuant § 3585(a), the earliest Petitioner's sentence could be deemed to begin was May 8, 2003, when he

was sentenced to serve his time on the federal convictions. Stated otherwise, the federal sentence can only be deemed to be served concurrently with the unserved portion of the state sentences – it cannot be have a retroactive commencement date. See Mathison v. Morrison, Civil No. 06-3496 (JMR/AJB), 2007 WL 3224671, at *4-5 (D. Minn. Nov. 01, 2007) (discussing federal circuit and district cases that have found that a federal sentence cannot commence prior to date it was pronounced, and accordingly, when it is ordered that a federal sentence run concurrently with a sentence being served, it can only run concurrently with that part of the prior sentence yet to be served.); see also Sisemore v. Outlaw, No. 09-3468, 2010 WL 364351 at *1 (8th Cir. Feb. 3, 2010) (per curiam) (stating the "district court's order that prison term should run concurrently with prison term already being served did not mean the two sentences had the same starting date; federal sentence cannot commence prior to date it is pronounced, even if made concurrent with sentence already being served") (citing Coloma v. Holder, 445 F.3d 1282, 1283-84 (11th Cir. 2006) (per curiam)); Stevenson v. Terrell, Civil No. 08-6058 (JRT/JJK), 2009 WL 1035161, at *3 (D. Minn., April 16, 2009) ("A federal sentence cannot commence prior to the date it is pronounced. Consequently, when a federal sentence is ordered to run concurrently with a sentence being served, <u>it can only run concurrently with that part of the prior sentence remaining to be served</u>.") (quoting United States v. McLean, No. 88-5506, 1989 WL 5457, at *1 (4th Cir. Jan. 13, 1989) (emphasis added in Stevenson) (other citation omitted).

The next question for this Court to address is whether Petitioner is entitled to credit for the days he spent in jail on the federal writ until his date of sentencing. Section 3585(b) allows a defendant to receive credit for time he has served in custody prior to the commencement of a sentence, arising out of the offense for the sentence

7

imposed, so long as that time "has not been credited against another sentence." 18 U.S.C. 3585(b). Based on the plain language of the statute, "Congress made clear that a defendant could not receive a double credit for his detention time." United States v. Wilson, 503 U.S. 329, 337 (1992); see also, United States v. Kiefer, 20 F.3d 874, 875 n. 1 (8th Cir. 1994) ("Because the time [the petitioner] served in state prison was credited against his Minnesota sentence, he does not appear to be entitled to a sentence credit under § 3585(b), which only allows credit for time 'that has not been credited against another sentence'") (quoting United States v. Dennis, 926 F.2d 768, 770 (8th Cir. 1991)); United States v. Kramer, 12 F.3d 130, 132 (8th Cir.), cert. denied, 511 U.S. 1059 (1994) (citation omitted); McIntyre v. United States, 508 F.2d 403, 404 (8th Cir.), cert. denied, 422 U.S. 1010 (1975) (concluding that a federal prisoner not entitled to credit on a federal sentence when he received credit toward his state sentence for that same time period). Pursuant to § 3585(b), Petitioner's federal sentence cannot be credited for his time in custody before his federal sentencing on the federal writ if that time has already been credited towards his state sentence. See, e.g., Noble v. Fondren, Civil No. 08-6259 (JRT/RLE), 2009 WL 4723357 at *6 (D. Minn. Dec. 02, 2009) ("Given that language, it is manifest that a petitioner cannot be credited for time in custody, when that time has already been credited towards another sentence."); Stevenson, 2009 WL 1035161 at *3 ("Given this language, it is manifest that a petitioner cannot be credited for time in custody before his federal sentencing if time has been credited towards another sentence.").

On August 5, 2002, when the USMS took custody of Petitioner on a federal writ of habeas corpus ad prosequendum for his appearance in federal court on the federal charges, he was serving his Iowa state sentences. "As between the state and federal

8

sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person." United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005) (citations omitted).[3] There is no dispute in this case that Iowa first obtained custody of Petitioner and therefore, had primary jurisdiction over him for the relevant period of time. Further, the fact that Petitioner spent time in federal custody before he was sentenced on the federal charges, based on a federal writ, did not serve to change primary jurisdiction from Iowa to the federal government. Id. at 896-97 ("while under the primary jurisdiction of one sovereign, a defendant is transferred to the other jurisdiction to face a charge, primary jurisdiction is not lost but rather the defendant is considered to be 'on loan' to the other sovereign.") (citation omitted); see also Munz v. Michael, 28 F.3d 795, 798 (8th Cir. 1994) (quoting Sinito v. Kindt, 954 F.2d 467, 469 (7th Cir.), cert. denied, 504 U.S. 961 (1992)) ("'[I]ssuance of [a] writ of habeas corpus ad prosequendum d[oes] not alter [the defendant's] custody status. It merely change[s] the location of his custody for the sentence he was already serving.'") (citation omitted).

Thus, given that Petitioner was in the primary custody of Iowa while on "loan" to the federal government on the writ of habeas corpus ad prosequendum, he was getting credit towards his Iowa sentence for those days he was temporarily in federal custody. Stevenson, 2009 WL 1035161 at *4 ("What is most important here is that Petitioner was

---

[3] The doctrine of priority of custody was first recognized by the United States Supreme Court in Ponzi v. Fessenden, 258 U.S. 254 (1922). The purpose of the doctrine was to promote comity, mutual assistance and orderly procedure between sovereigns. Id. at 259. The Court stated, "[t]he chief rule which preserves our two systems of courts from actual conflict of jurisdiction is that the court which first takes the subject-matter of the litigation into its control, whether this be person or property, must be permitted to exhaust its remedy, to attain which it assumed control, before the other court shall attempt to take it for its purpose." Id. at 260.

9

getting credit towards his Michigan sentence throughout this whole 345-day period, including those days when he was temporarily in federal custody pursuant to a writ."). Under these circumstances and in accordance with § 3585(b), Petitioner may not receive credit on his federal sentence with the time that had already been applied toward his Iowa state sentence. See Kramer, 12 F.3d at 132 (affirming the BOP's refusal to grant double credit for time credited on a state sentence, and citing McIntyre, supra, for the proposition that a "federal prisoner [is] not entitled to credit on a federal sentence when he received credit toward his state sentence for that same time period.").

In support of his claim that he should be given credit for the time he spent in federal custody while under federal writ, Petitioner relied upon Judge Reinhard's post-sentencing docket entry and the Third Circuit's analysis of United States Sentencing Guideline ("U.S.S.G.") § 5G1.3(c) in Rios v. Wiley, 201 F. 3d 257 (3d Cir. 2000). See Pet.'s Mem., pp. 2-3. In Rios, the defendant, a New York state inmate imprisoned for a conviction on a state charge unrelated to his federal conviction, was taken into federal custody for a period of 22 months pursuant to a writ of habeas corpus ad prosequendum. Rios, 201 F. 3d at 260. Prior to the sentencing hearing, the Government sent a letter to the sentencing court discussing the application of § 5G1.3(c) to Rios' case. Id. At the sentencing hearing, the following colloquy between counsel and the court took place:

> Rios's attorney asked the court to consider, among other things, the fact that Rios had been in federal custody pursuant to the second writ since March 1992. Specifically, he asked the court to "sentence Rios to the minimum guideline applicable which is 84 months, and to have that run concurrent with the time he is serving on the state case." When the assistant United States attorney stated that the "state conduct was not counted in calculating the offense

> level in this case," Rios's attorney interjected that he did not mean to imply that it had been. Immediately thereafter, the court asked the government attorney whether Rios, if given credit for time served, would receive credit back to March 1992, the time of the execution of the second writ by the federal authorities. The government attorney answered that crediting was a technical matter, and that he could not respond to the question at that time. The court replied that the answer was not material and it proceeded to sentence Rios.

Id. at 260-61.

Thereafter, the sentencing court sentenced Rios "to a term of 90 months on both counts to run concurrently with each other and concurrently with the state sentence and receive credit for time served." Id. at 261. The judgment similarly stated "Defendant to receive credit for time served." Id. The court did not specify what period of "time served" should be applied to the federal sentence. Id.

Following sentencing, Rios was returned to New York state prison where he served out the balance of his state sentence. Id. At the same time, the BOP designated the New York state prison for service of Rios' federal sentence by executing a *nunc pro tunc* designation specifying that his federal sentence commenced on the day of his sentencing. Id. The BOP did not give Rios credit for the 22 months he had spent under federal control pursuant to the writ. Id. Upon release from state prison, Rios was received by the BOP for service of the balance of his federal sentence. Id. When Rios learned of the BOP's refusal to credit his federal sentence for the 22 months he served while in federal detention pursuant to the federal writ, Rios filed a habeas petition seeking a release date that took into account these 22 months. Id. at 261-62.

In affirming the district court's grant of habeas corpus relief, the Third Circuit recognized that the general rule prohibiting double credit articulated in § 3585(b) applied to situations where "the prisoner was in federal control pursuant to a writ of habeas

11

corpus ad prosequendum during the time period for which a pre-sentence credit is sought." Id. at 274. Nevertheless, the Third Circuit agreed that Rios' sentence should be reduced by the 22 months he had served while in custody under the federal writ, concluding that the sentencing court had exercised its discretion under U.S.S.G. § 5G1.3(c) when it stated that Rios should get credit for the time served as part of his sentence and "given the circumstance that Rios already had served 22 months on an unrelated state conviction at a time that he was in federal custody." Id. at 266-67.[4] According to the Third Circuit, "[w]e understand section 5G1.3(c) to permit a district court to exercise its discretion and award a concurrent sentence in a manner that would ensure that the federal sentence, while imposed at a later time, took into account prior time served on an unrelated state sentence." Id. at 265, n. 8 (citation omitted). Relying on the letter from the Government discussing the application of § 5G1.3(c) to Rios' sentence, the discussion between the court and counsel at the sentencing hearing, and the judgment entered by the sentencing court, the appellate court decided that the sentencing court had exercised its discretion under § 5G1.3(c) to determine the reasonable incremental punishment for his offense, and Rios' sentence should be adjusted accordingly. Id. at 265-67.

Rios has no application. The Third Circuit's reasoning was premised upon a record that is not present here, including a letter the sentencing court received from the Government which explicitly raised the application of § 5G1.3(c), the discussion at the

---

[4] Section 5G1.3(c) in effect at the time of the Rios decision provided that the federal sentence should "be imposed to run consecutively to the prior undischarged term of imprisonment to the extent necessary to achieve a reasonable incremental punishment for the crime." Rios, 201 F. 3d at 264 (quoting § 5G1.3(c) (Nov. 1993)). At the time Petitioner was sentenced in this case, § 5G1.3(c) stated: "In any other case, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense."

sentencing hearing regarding credit to be given for the 22 months Rios had spent in federal custody, and the statement by the court at the hearing and in the judgment that Rios was to receive for credit for time served. Id. at 266-67. Stated otherwise, unlike Rios, in this case, there is nothing in the record indicating that the sentencing court intended to make any downward adjustment based on U.S.S.G. § 5G1.3(c). The only statement this Court has before it was Judge Reinhard's remark during the sentencing hearing that he was making the state and federal sentences run concurrently "because they are related at about the same time and the same type of offenses." Pet.'s Mem., Ex. A (Excerpt of Transcript from Sentencing Hearing). As such, this Court cannot find that the sentencing court applied U.S.S.G. § 5G1.3(c) to impose a reduced federal sentence based on time served in federal custody.

In summary, while a sentencing court can adjust a sentence, § 3585(b) does not authorize a district court to award credit at sentencing, as the issue of crediting falls under the purview of the BOP. See Wilson, 503 U.S. at 335 ("Because the offender has a right to certain jail-time credit under § 3585(b), and because the district court cannot determine the amount of the credit at sentencing, the Attorney General has no choice but to make the determination as an administrative matter when imprisoning the defendant."); see also Gibson v. Reese, 55 Fed. Appx. 793, 2003 WL 262491 at *1 (8th Cir. Feb. 10, 2003) ("Further, the BOP had authority to determine the amount of credit Gibson was to receive, and was not bound by the sentencing recommendation.") (citation omitted); Noble, 2009 WL 4723357 at *7 ("The case law within our Circuit reveals that where a Sentencing Court attempts to award credits, or to back-date a commencement date, a reviewing Court does not construe that action as an attempt to apply Section 5G1.3.") (citations omitted). Consequently, it is the BOP, and not the

13

sentencing court, that determines whether to provide Petitioner credit for time he has served in custody prior to the commencement of a sentence. Moreover, even if the BOP wanted to follow the wishes of the sentencing court, as set forth in the docket entry, it could not do so based on the prohibition set forth in 18 U.S.C. § 3585(b) against providing a defendant with double credit for time served.[5]

For all of these reasons, Petitioner's arguments that he should receive credit towards his federal sentence for the time he spent in custody on the federal writ are rejected and his Petition should be denied.

## III. RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that Petitioner Kevin J. Kennedy's application for habeas corpus relief under 28 U.S.C. § 2241 [Docket No. 1] be **DENIED**.

Dated: April 29, 2010

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

---

[5] To the extent Petitioner was seeking to have the Court amend the Judgment, in order to reduce the sentence under § 5G1.3, that request should have been brought by a petition filed with the sentencing court pursuant to 28 U.S.C. § 2255, as it is an attack on the Judgment itself. See Noble, 2009 WL 4723357 at *7; see also Watson v. United States, Civil No. 05-412 (JNE/JSM), 2006 WL 1428295 at *3-4 (D. Minn. May 23, 2006) (concluding that the court was barred by 28 U.S.C. § 2255 from entertaining Petitioner's habeas petition under § 2241, which asserted that the sentencing court intended to apply § 5G1.3 by recommending credit for time served, as an attack on the sentence applied by the sentencing court).

**NOTICE**

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **May 13, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within fourteen days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.